The case this morning is 2012-1600, Apple v. Samsung. And while it's not listed on the sheet, my understanding, so tell me if anyone disagrees, is that we've consolidated this with another appeal, 2013-1146. So we'll be hearing both cases argued together this morning. Correct? Thank you. Now we've got a little bit of an unusual setup here in terms of the briefing and the slides and so forth. So my understanding is also that Mr. Lee for Apple and Ms. Morales for Samsung will be arguing first and then have rebuttal time, reply time after the other side is gone. Correct? Correct. Mr. Lee? Thank you, Your Honor. May it please the Court, my name is Bill Williams, together with Andrew Danforth, I represent Apple. I'd like to begin by focusing on three facts, each of which I believe is, on this record, undisputed. First, from the thousands of documents involved in the case and made public, Apple's appeal only focuses on 22 documents, documents that we contend contain Apple's detailed financial information, which is a trade secret, and its market survey information, which is a trade secret. Second, the information that Apple seeks to seal was not admitted into evidence at trial. And this becomes important because of the chronology of events, which we led through so maybe a little bit more emblazoned in our memory. But the court's order that is issued before you was issued on August the 9th. The briefing was done on August the 6th. The damages experts had not yet testified. So the question of what was going to come into the public record, which was the court's principal concern, had not been addressed. And in fact, at A5 in her order, she specifically recognized, Judge Coe specifically recognized that a joint stipulation had been filed, and she says, that may obviate the need for rulings on some of the parties' trial suits. She issued the order, she made that ruling before the damages experts testified, and before the joint stipulation, just as the joint stipulation had been filed. She also ordered us to take an immediate appeal. So the notice of appeal, which resulted in this argument today, was filed on August 13th had been addressed. But by the time that all occurred, in the couple weeks that followed, the court had been divested of jurisdiction because we not only filed an appeal, but her order had filed our brief very quickly. So the question of whether this evidence, these 22 documents went into evidence, was important not just because it goes to the merits of the appeal, but the chronology is that the question of what went into trial may affect the question of whether an issue should be sealed. Did you ever go back and ask her to reconsider any of her decisions post-trial? We couldn't, Your Honor, because on this issue, she'd been divested of jurisdiction. There have been a series of follow-on sealing motions in this case and another case between until this court decides to disappeal because she has said and the magistrate has judged us that they're waiting for guidance from this court. So there are mechanisms where you can ask a trial court to reconsider and based on whether or not they would be willing to reconsider if the case would be remanded, you could ask for a remand for that purpose. Your Honor, we considered it. I think what happened was she ordered us to file the notice of appeal. She ordered us to file the brief on an expedited basis. By the time the experts testified and it was clear what was in the record, the first set of briefs had been filed with this court by both Samsung and Apple. We didn't think we had jurisdiction to have her revisit those issues. On the subsequent sealing motions, we did think she had jurisdiction to decide them. She has made rulings, but she has stayed in enforcement of those rulings until she has gotten guidance from this court. So you're saying that in this particular case between these two parties, there were other issues regarding sealing, but they're all not on their way up here. She's still... I made them unclear. There are two sets, I would say. She decided a host of sealing issues during the course of litigation. None of those before the trial except these 22 documents for Apple and the 12 documents for Samsung are before the court. There have been, as you would expect, post-trial motions and proceedings. There have been some sealing issues that have arisen in those post-trial proceedings. She has issued rulings, as has the magistrate judge, but they have stayed in enforcement because the type of information that's at issue is exactly the same type of detailed financial information and market survey information that's at issue here. So just to get clarification before we might get into a discussion of the merit kinds of issues, with regard to what's before us, in your more recent letter, March 18th, where you tried to help us out, I think, by discussing what's left and what's here, in the final paragraph and really the final section of that paragraph, and this is talking about the second appeal now. Yes. You talk about customers outside the U.S., okay. But the last sentence, I'm a little unclear on what you're telling us there, and that's with regard to the market research document. Yes. So if you take the 12 market research documents, and if I could put it in context, Your Honor, there are 12 pages of a 500-page document. You're talking about nine research documents. There are nine market surveys that total about 500 pages. Okay. Of those, Samsung put those into the record on the briefing on the motion for permanent injunction. They cited 12 pages. We represented to Samsung, and we represented to this court, that for those 12 pages, the material that was actually relied upon in the briefing or before the court, we believe should be made public. That falls into two categories. The first six pages, which are cited in the third line of the last paragraph letter, would be made public in their entirety. The remaining five pages have both information for U.S. customer survey information and ex-U.S. customer survey information. The information that Samsung relied upon in the post-trial briefing was the U.S. customer survey information. We proposed to make public that information. What was redacted on the exhibits filed with the court is the ex-U.S. customer survey information. Those are the five pages you refer to, I guess, in the third sentence. Those are the five pages. What I was confused about was what is the meaning of the last sentence of that paragraph where you say that Apple seeks to seal the remainder of the material, which is 500 pages. What are you referring to there? If you take the market surveys in their entirety, and this is the reason the appendix is as big as it is. If you take the market surveys in their entirety, they total about 500 pages. Understood. The 12 pages here are the ones that were cited. Right. What we're asking is the other 488 pages that were not referred to in the briefing, not the basis for Samsung's briefing, never referred to by Apple. We're asking that that be sealed. Right. Are those 488 pages or whatever, are those now subject to Judge Koh's disclosure order in the second appeal? I think that, at least as we read it, the answer would be yes, although it's big. You're not just asking for us to reverse her with respect to these five pages. You're asking us to reverse her with respect to essentially 500 pages. Yes, on the market survey information. Okay. On the market survey. I'm trying to, because it's difficult to fully follow the order since there are things that are removed from the order. In that, now that we're jumping to that appeal for a second here, in that appeal, when she ruled on the preliminary injunction, she cites the customer survey information. So separate apart from whether Samsung cited it or you cited it, did the court cite any of the information that you're asking us to keep sealed? My belief, and I'll confirm, my belief is that the other pages were not cited by the court in the preliminary injunction appeal. The other pages meaning, just to be clear, the pages that you're now seeking to seal. Yes, yes. This is the specific argument, Your Honor, that goes to both Judge Bryson's question and yours is the following. The market survey information is very important information to Apple. On the record, this market survey information is survey information of Apple's customers with specific questions formulated by Apple with Apple's conclusions. It's treated as a trade secret. Its disclosure is limited. It's reviewed on a quarterly basis. It's limited to people who need to know. We believe that under comment B to section 757 of the restatement, it is a trade secret. That then brings us to the 500 pages. And the question is, if I were to break it down, are the 488 pages necessary to help the public understand the judicial process? And I think one place that we may depart from the amici is this. Neither Samsung nor Apple will stand here and tell you that the case didn't garner a lot of public interest. Neither of us will tell you that there isn't public interest in Samsung or in Apple. But the question for these specific documents, and the reason I think we both have tried to bring to you a narrow question, is this. Given all of the information that was in the public record, given all the disclosure was made, given that after Her Honor's ruling, the parties entered into a joint stipulation that obviated the needs for this very confidential product-by-product information, category-by-category information, would it, does it aid the public's understanding of the judicial process in this case to have that additional information? But Judge O'Malley's question I think goes to the heart of it. It's hard to make that determination unless we understand whether or not the district court relied on that information. Because if she did, it may in fact answer your question. And certainly with respect to just the category of market research documents, to the extent at least in the preliminary injunction context, there's a nexus issue that relies heavily on consumer surveys. I'm not familiar with the permanent injunction. We've not had that case before us yet. But the question is whether or not the district court really relied on that. That may answer the question. I believe for these pages the answer is no, but we'll confirm that to be sure. But I think these pages, the basis for the supplemental appeal or the second appeal was the fact that these pages were used in the permanent injunction bracing. Now, to be sure, Your Honor is correct that we have a debate again, disputum again between us on some of the causation and excess requirements. But these documents, which are Apple's documents, were submitted by Samsung on a causation issue. And the 12 pages were cited as evidence of causation or nexus or the absence of causation or nexus. We have, you know, we agree that that information that was used to make that argument should become part of the public record. Whether it's you apply the compelling reasons standard or the just cause standard, given that it's post-trial, I don't think matters. We have said from the outset that should become public. And we think that's also consistent with what Judge Koh did during the course of the trial. The that that you say should become public is what again? Actually, Your Honor, if you go to the last page, the first six documents in their entirety because they were referred to in the briefing and the second five documents because they were also referred to in the briefing. Does it matter who refers to documents in briefs? In other words, is there a different standard when it's your opponent that is putting these matters forward than when it is the parties who are seeking to maintain the integrity of the documents? Your Honor, let me say this. I don't think that's a precise technical matter. It matters. But if Your Honor is considering the issue in a broader policy context, it should because this is information that our opponent in the case put into the public record. We have no control over whether they put it in the public record or not. In fact, I'm not referring to this particular case. But in general, it would seem that if the rule is the same with respect to documents that the first party puts in as opposed to the party opponent, the party opponent would have an incentive to put into the record materials that might be awkward or embarrassing to the principal party. I didn't see anything in the Ninth Circuit cases that suggests a distinction along the line that Judge O'Malley suggested, but it does seem to make sense. Well, I don't think there's anything in the cases that makes the distinction. I think it makes practical sense, particularly to think of the kind of litigation that comes before this Court. And actually, I may be reading too much into the Comica decision, but when they talk about trade secrets, they're talking about the sort of illegitimate release of the trade secret information and taking it out of the control of the trade secret holder, which would address the situation that you have. Now, let me say two things, and I know I'm in my rebuttal time in a substantial way. Mr. Danforth tells me that the other 488 pages were not cited by the district court in its preliminary injunction opinion. It did cite other market surveys in the course of the preliminary injunction ruling that came up to this Court. So these 488 pages have never become an issue during the course of the litigation. I think the second thing I would say is this. Judge Koh was very attentive to the public interest in the case and very concerned about being sure that that which would allow the parties and the press to understand the judicial process was considered on a daily basis. So by way of example, there were 240 exhibits and thousands of pages issued during the trial, except for some source code, largely of third parties, and some license terms, everything. Can I just take you back before I talk about anything? Sure, sure. On the point that you were discussing with Judge O'Malley and Judge Bryson about the heightened interest or whatever, if you're the ones that put in the documents, Judge Koh actually, and I wanted to ask you about that, and a portion of her opinion, and this now goes back to the first appeal, I think, but it's not dealing with the research documents. She kind of used it against you. I mean, she did, with respect to certain of the documents, point out that Apple has allowed a limited amount of such information to be introduced when it served its own purposes for a large damages award. Do you know what she was talking about that? This was in the supplemental sentence. Yeah, I don't think that she's not referring to the information that's before you now. Let me say two things in response. The first thing is there were damages claims going both ways in the case. There were claims, affirmative patent claims to address claims going from Apple to Samsung, Samsung coming back. Our damage claim was about $2.7 billion. Theirs was about $500 million. So there were substantial damage claims going in both directions. When Her Honor expressed concern about public access to the financial information that might underlie those damages opinions, and I would put them going both ways. It would be the opinions going both ways, plus the attack on those opinions going both ways. That's what led to this joint stipulation, and that's what led to her comment at the top of day five that joint stipulation may obviate much of this, the need to consider this. And we actually sat down and entered into a joint stipulation so that we could use information at a more global level without the detailed information of units, prices, indirect costs, direct costs. But is it your view? I mean, I wanted to ask you about how broad or how limited the trade secret exclusion is here, whether it's a blanket exclusion or whether it's just a factor to be considered and to be weighed. But also in that regard, is there a waiver with respect to trade secrets? I mean, her comment sort of suggests that if you let profit margin information in in one context, then similar, but different numbers sort of suggest that you should let that in otherwise. And I'm not clear on whether that was her view of the trade secret exception or not. Let me answer the questions in reverse order. The first is I don't think that's her view, and here's the best reason why. She looked at the capacity information, and capacity was an issue during the course of the trial because of the application of the Panduit factors for lost profit reasons. She found that the capacity information in the hands of a supplier, even though it was historical information, could provide a competitive advantage to our suppliers in negotiating with us, and I think she was 100% true, even though it was historical, and that that did nothing to further the judicial process. So the fact that something was an issue didn't leave her an extra blade to the determination that, yes, it should be disclosed. She was trying to draw the line. I think on the first portion of her question, Your Honor, there are basically two different places to look. The Ninth Circuit looks at Comment B to Section 757 of the restatement. The Bean Declaration, Jow's React Declaration that are in for the Apple information, I believe makes it a trade secret under both, under Comment B to Section 757, which is what the Ninth Circuit applies. Arguably, Rule 26C, which has the just cause standard in the federal rules, that's a broader than the restatement. I think the information that we've provided you would fall within that category. Now, I would say this, Your Honor. If we had put in a damage claim where the two of us, for some reason, were fighting about the specific indirect cost on a specific product in a specific year, and we put that information in the public domain, it's in the public domain. What I was going to say when I was talking about the manner in which the trial operated, we were ordered, and Ms. Marvolis will remember this clearly, we were ordered by the end of every day to put every exhibit on a thumb drive and deliver three thumb drives to the press room within a half hour of the close of business. The press and the public, at least in my experience, had immediate access, extraordinary access, and literally, they physically had every single exhibit that was introduced by the close of business each day. Can I ask one question? My circuit adopted this two-part test seemingly with little fuzziness in between dispositive and non-dispositive motions. When we think of a summary judgment motion, for example, as being a dispositive motion in that it will, if granted, lead to disposition of the case. If the summary judgment motion is denied and the case goes to trial, would you say that the summary judgment motion then is not dispositive given that kind of analysis because it is not the vehicle through which the case was decided. It is the trial that led to the decision of the issue in the case. Your Honor, I'd say two things. I think in the Ninth Circuit's, in the opinions that describe this distinction, I don't think they distinguish between motions for granted or denied. They don't do it, but I wonder whether they also don't seem to address it. I wonder if the policy underlying the distinction suggests that perhaps a denied summary judgment motion is not a dispositive motion for purposes of the kind of public access concerns that you propose. Yeah, and I think, Your Honor, the answer is the two factual situations are different for the reason you articulate, and here's the reason why. If we step back to the overriding purpose, which is to ensure that the public has access to information that allows it to understand the judicial process, if the summary judgment motion is granted, for instance, in the Midland case, if the Dabur motion was granted and summary judgment is granted, then it's critically important for the public to understand that the judicial process, if it's denied, it's not how the case is being resolved. Now, the line we've drawn here, I think, is even a little bit more generous for lack of a better word. We have said that for any of these motions, the information that was actually briefed, actually considered, for instance, on the dispositive motion, the injunction, the public can and should have. We've also been very clear that the information that actually was used to decide the case, the damages expert's testimony, the joint stipulation, all of that information was made public and was in the public's hands. Well, let me ask you, is your view on the supplemental appeal when we're talking about the permanent injunction and the damages issue, I was a little fuzzy on whether Apple's position was that falls within the good cause area because it's a nondispositive matter or whether it falls within the compelling reasons. Your Honor, to the extent that we were fuzzy is because I don't think there's any case that has said whether it falls within either category or not. I can't really make an argument for you both ways. But I can see the argument that it really falls in the category of compelling reasons. I think that you could make an argument very easily that it falls closer to a summary judgment motion, whether denied or granted. But I think if we apply the compelling reasons standard, the compelling reasons standard ought not result in a situation where 488 pages of information of Apple that Samsung put in the record, which is not referred to at all, not referred to in the briefing, not referred to in our Honor's decision, becomes public. I think that there's a compelling reason to show that information on the basis of what's before the court now. Can I just say one thing? Sure. I know we're way past time. We are. And we'll ask all these questions of everybody else as well. But let me talk to that. You said the expert testimony that was submitted, everybody had access to the expert testimony that was submitted at trial. The problem is that, well, there's two problems here. But first, the expert opinion, though, it said in the expert report, as I understand it, that they relied upon the totality of all the documents that were provided, including some that you decided not to introduce at trial. And since the expert's opinion can rely on anything, including hearsay, how do you extract from the fact of that opinion some of the detail that they might have ultimately sort of put into the process of their own decision making when they formulated their opinion? Your Honor, I think there are two answers, one factual, one legal. The results of the joint stipulation that the parties entered into, which was very specific on the financial information that the experts were relying upon, that was all in the public record. That was all the subject of their testimony. And it was a subject of very vigorous cross-examination going in both directions. So everything that was the foundation of their opinions was public, no effort to seal it, really subject to the crucible of cross-examination. Did the experts rethink their opinions based on a more limited set of data? No. I mean, the opinions were fundamentally the same. And actually, Your Honor, the second portion of my answer would be a legal answer. The Supreme Court addressed this in Seattle Times and said, Seattle News Indicators, and said experts will review lots of information. The expert reports will have lots of information. That doesn't necessarily make it all subject to public disclosure at the time of trial. The question is, what was in the public record? What was the process and the information, the evidence that was used to reach a decision? If the Daubert Motions had been granted or granted in full, would that have been essentially the end of the case? I think the answer is no. The Daubert Motions, Your Honor, because of the different types of intellectual property in the case, there were different types of damages remedies. So there were lost profits, there were reasonable royalties, there were infringer's profits for design patents, there were contingent royalty opinions. There would have still been damages going in both directions and have been of the same magnitude. And then ultimately, there would have been the question of there being nominal damages and injunctive relief. Does the trial judge rely on any of the things that you speak to keep sealed in ruling on the Daubert Motions? The answer is no, Your Honor. The reason a lot of this information was in is because you have Daubert Motions. While they don't go to the entirety of an expert's opinion, they went to large portions. And one of the things that happens often in Daubert is so the court has the context of what's occurred, the full expert report is submitted as an exhibit to the court so the court has the report. And my experience is that courts often want the full expert report for the Daubert Motions. Courts often want the full expert report when the expert's testifying so they know whether they're going to be on the report or not. I think what the Supreme Court said is that doesn't make it all publicly disclosable, not because it's a trade secret, not because they didn't consider it, but because to go to Judge Bryson's question, it's not essential to understanding, well, it's not important to understanding the judicial process. And I think these two sets... Because it's not even evidence, right? It's hearsay. In part, yeah. And I think what we tried to do with our letter was to identify the pages and the highlighted portions that remain an issue because there are some portions that no longer remain an issue. But those portions, the court will see, are very specific, very small, and we submit don't deprive the public of the information to understand this judicial process. Why don't we hear from Ms. Morrell now, and we'll restore you a couple minutes on your comments, and it's our fault, not yours, that you were up here for so long. May I please report? My name is Victoria Morrellis, and together with my partner, William Adams, who represents Cross-Examination Fund. First of all, I concur with much of what Mr. Lee had said, and will try not to repeat myself. Well, let me ask you things that we didn't necessarily have a chance to get into with Mr. Lee, and that is the whole question of trade secrets. Is it Samson's view that there's just a blanket exception, that in this bucket of trade secrets, this automatically meets the compelling reason standards, and it's case over, the public is denied access? Your Honor, the Kamenaca case, which is the seminal Ninth Circuit opinion, sets out trade presumption of public access, and the Ninth Circuit applies typically a restatement of what trade secret is, so it's not automatic insofar as you still have to prove in detail why the information that you submitted qualifies as a trade secret. Not all financial data is automatic. But some definitions of trade secrets, at least, are pretty broad. So is it your view that even if it comes within the broader rubric of a trade secret, that the district court can't assess sort of the weight or the significance of that trade secret vis-a-vis the significance of the public? Isn't it still pretty much a balancing, fact-specific inquiry, even if the information comes under the title of trade secret? Yes, Your Honor. It's definitely a balancing act, and the district court here, to some extent, engaged in a balancing act, but one of the ways Samson... And our review of her balancing act is an abuse of discretion. Yes, that's correct. Abuse of discretion is the rule. But in Samson's situation, it's a little bit different, because while, with respect to Apple, the court went through the various factors that Apple put forward to show that something is a trade secret, with respect to Samson, the court at 821 basically said, for the same reason that Samson confidential financial data is not a trade secret. I'm still not sure that you completely answered just the question, and you say, yes, it's a balancing, but I guess the question, it comes through, at least, seems to come through from your brief, that your view is, here's the public interest, and we must balance it against the need for secrecy, and once you have a trade secret, by definition, you've got the balance that overcomes the presumption in favor of the public. Is that your view, or do you think that the trade secret at least maybe neutralizes things, but then you still need to do a balancing act for that? The trade secret elevates the side that is seeking to seal the documents, because at that point, they have met, if they met the trade secret definition and explained how the trade secret outweighs the public's right to know in this case, then the compelling reason was demonstrated. I want to go back to what Mr. Lee said, which is that the documents at issue are all documents that were submitted in connection with a pretrial motion, and your honors were questioning Mr. Lee about some of them and how significant they were. For example, the four documents that SAMHSA was seeking to seal, and only small redacted portions, even though they were submitted in connection with a judgment motion, none of these documents were cited by Judge Koh, and for some of them, they became even further relevant, because, for example, one of them was submitted in connection... Yes, but we've got so many lines here to be drawn. We've got the distinction between good cause and compelling reasons vis-à-vis dispositive and non-dispositive motions. We're all in agreement that the Ninth Circuit tells us that they're attached to a summary judgment motion. We're talking about a dispositive motion to which compelling reasons apply, not good cause, right? Yes, Your Honor. But what I was trying to say is that with respect to the summary judgment motion, one of the patents at issue in connection with which the document was submitted was later dropped by Apple, so that patent did not even go forward into the trial. So not only were these pretrial motions, but these were not part of the trial record at all, insofar as weighing the public interest to know how the trial went and what was presented at trial. So none of the very narrow redactions of the 12 documents that Samsung is seeking to seal would be something the public would need to know and need to fully understand to appreciate the trial. What about Judge Koh's argument that she makes, at least briefly, that, well, because every single piece of admissibility, every issue of admissibility was hard fought here, that whether a piece of evidence came in or didn't come in, those rulings really do impact the public's ability to understand the proceedings, because maybe there was a piece of evidence that the jury didn't see, or maybe there was a piece of evidence that they did see, but that the other side didn't want them to see. How do you respond to that? She essentially puts those in the dispositive motion category. Your Honor, the Ninth Circuit articulates the difference between dispositive and non-dispositive, but the Ninth Circuit says that it's not about the labels. It's about the merits, essentially. So to the extent, for example, if the Dalbert motion was of the type that if the entire motion was granted, one of the two experts could not present their argument at all, that would be tantamount to dispositive motion. In this case, both sides moved to exclude portions of each other's expert testimony. So even if that Dalbert motion was granted in full, the experts could still proceed and testify. That tells us that it was not a merits disposition in the way it would have been in the Midland case of the Ninth Circuit, where a causation expert, if that expert was knocked out on the Dalbert motion, there was no case. Well, that seems to assume, I mean, what Judge O'Malley was referring to, I think, is Judge Coe's reference to the public interest. And she describes it as crucial to the public's understanding of the proceedings. So that suggests that the public interest, and is she wrong about that, that the public interest is broader than just who wins and who loses and how much money does X have to pay to Y. That it goes to understanding how the proceedings went down. And if that's correct and you agree with that, then why is she also not correct that closely contested evidentiary issues and questions regarding the admissibility of evidence fall within that broader scope of the public interest in understanding the judicial proceedings? Your Honor, what was missing in the analysis in the court below was the harm that would inure to SAMHSA if those very narrow specific numbers were disclosed. Because in balancing the public's interest in knowing how the trial is proceeding, how the proceedings went forward, Judge Coe didn't give sufficient credence to the harm that would occur to SAMHSA and to Apple if the disclosure of this highly sensitive financial data were to occur. And that is part of the balancing task in figuring out if something's a trade secret and whether the harm disclosure outweighs the public's right to know or interest in knowing how the trial is occurring. Here... Well, at least with respect to... I mean, I take your point that she didn't analyze the exact details of SAMHSA documents. She was analyzing Apple. But in that regard, she did do an analysis, which is subject to an abusive discretion review with respect to the kind of harm that would inure to these specific documents. I mean, she had kind of three reasons that she went through that obviously Apple contests in its brief. But she did do that kind of analysis in terms of the nature of the harm. Your Honor, the court did not do such analysis as to SAMHSA. SAMHSA submitted several declarations by high-ranking finance department officials at SAMHSA that explain in detail what kind of harm would occur if these numbers were disclosed. And we need to remember that these are just very specific numbers. A person reading the redacted report would still fully understand the methodology that the expert is employing. They would understand why experts make certain conclusions. Do you think... I'm sorry. Go ahead. What they won't see is literally the profit margin or the specific cost of goods in a table. And... Do you think there's a qualitative difference between the showing that Samsung made and the showing that Apple made with respect to the potential harm of disclosure? By which I mean, was there something that Samsung pointed out that was different in time, in nature, from what Apple had shown? Your Honor, one thing that's different was simply that the two companies take different measures to protect their information. So Samsung filed a specific declaration illustrating the type of secrecy measures that are taken with respect to the financial... Well, that doesn't have anything to do with harm. But that shows that the harm is very significant. They think that they would like to avoid having to release the materials, but that doesn't mean that the consequences of release would be different for Samsung than for Apple. What I'm fishing for here is this. You say that Judge Koh erred by not separately analyzing Samsung's showing, but I'm looking to you to show me what it is about Samsung's showing that is not effectively encompassed by Judge Koh's statement that the same analysis applies to Samsung. Your Honor, I will direct the Court to the declarations of Giho Roh at the record numbers 4606 through 4609 and 4616 through 4624. But in short, Mr. Roh declared that while he's never been in a situation where Samsung data was disclosed, so he necessarily is extrapolating because that hasn't happened in the Samsung case. He's trying to prevent it from happening. That would be very detrimental. And further, he declared that if he somehow came into possession of similar information of a competitor, he could make a lot of decisions based on that competitive financial data to potentially undercut the competitor. So that is where Samsung put forward specific evidence of potential harm. And both Samsung and Apple have a bit of a disadvantage here because they cannot point to past lapses, precisely because both companies guard the information so significantly. As I understand it, one of the distinctions that you've at least tried to make is that the Android market is fundamentally different than the iPhone market. Did you actually submit evidence to that effect? Your Honor, not in connection with ceiling. There was no specific declarations addressing that. But throughout the trial, there was discussion of competition in the Android phones. And the interchangeability point is more significant for Samsung than it would be for Apple. So to answer a few of the questions that Your Honors previously posed to Mr. Ali, to the extent you want to hear some of them again, a lot of documents that Samsung appealed were and this does not just concern the Dalbert motions. There were also motions to strike expert testimony and motions in the M&A. And eight of the documents at issue concern those non-dispositive motions. And were all of those motions denied? With respect to those portions that concern the cited redaction documents, yes, Your Honor. Basically the answer here is that the motions were always combined. We had a brief that would address eight different experts. And so they were denied as to these particular documents. The four summary judgment motions were the documents that were associated with those. I'm sorry. The four documents associated with the summary judgment motion were all, as I understand it, by Apple. Is that correct? Yes, Your Honor. They were put by Apple. And two of the four, actually all four of them were very much incidental to Apple's arguments. Two of them were the alleged documents that showed alleged copying. And so the cost component we're seeking to see was just one tiny component of a large PowerPoint. And this was shown in connection with the secondary indicia of non-obviousness. Do you think the fact that they were put in by Apple and not by Samsung puts you in a different position from Apple legally for purposes of our analysis of the question of sufficiency of this gentleman? Your Honor, the case law doesn't address whether it depends which party relies on a particular data. But it doesn't say either way as far as I can tell. Yes, Your Honor. What might be helpful is that the specific financial data is a very small incidental part of those documents. Typically the two declarations I have in mind are design documents. So you have a large PowerPoint deck that talks about development of the phone. And on one page there may be one cost development number. It's very specific. So it doesn't go to either the subject of summary judgment motion or particularly sell-in to anything. And the other two exhibits that were attached to Mr. Muzica's declaration were not even cited by Apple. But both parties, trying to be complete and helpful to the court, sometimes submitted a larger set of the documents. If possible, I'd like to reserve the remaining two minutes for rebuttal. Thank you. Mr. Leslie? We've given the other side a whole lot of time. So you have allocated yourself five minutes if you want to go a little beyond that. It would be quite meaningful. Okay. If that's necessary. All right. Well, good morning and may it please the court. I'm here to speak for five minutes on behalf of the Reporters Committee for Freedom of the Press and the seven news organizations that joined our brief. Mr. Parnas will speak for ten minutes on behalf of the First Amendment Coalition. The Reporters Committee has been involved in access cases for decades. And it's a sign of the times that we're before the federal circuit now for the first time, I think, that the public interest in patent disputes has never been higher. And news organizations we represent, as amici, have audiences that desperately want to know about all the facts in these cases and how it affects the marketplace. While journalists have no greater right of access to the courts than any other citizens, it is journalists who rely on access regularly to report stories to the public, and it is news organizations who are typically the ones litigating the cause of greater openness. Is your interest, I mean, your brief was very articulate, and I commend you for that, but is the interest then really in the companies that happen to be litigating because your readers want to know whether to invest or where the businesses are going, or is your interest in how the decision was made in court to rule in favor of one side or the other? I think those are elements of the interest, but the interests are incredibly broad. The interest in particular companies is important, but the interest in how courts work, how courts allow one company to end up with a billion-dollar judgment against another company, is just essential to people as citizens to know how their courts work. But isn't the public interest we're dealing with here narrower than that? I mean, the public interest we're dealing with in terms of balancing the compelling reasons and so forth, it seems to me that public interest historically has been applied to a particular case and the judicial proceedings, and the public interest in knowing how this particular case was litigated and came out the way it did. It seems to me you're proposing a more expansive view of what the public interest here is. Part of the reason is there are different public interests, depending on whether you're trying to apply a First Amendment right of access or a common law right of access, but even in the common law right of access, it's typically the public's interest in knowing how the proceeding runs, how the court makes its determination. It's rarely specifically the information at issue in the case. That's always part of the public interest, but it never defines the complete public interest. So knowing how the proceedings run, why does that have anything to do with whether patent law is a big deal now and the patent wars are something that the public in general has an interest in? What's that link between the two? Well, I think the public wants to know how courts dispose of these claims. If a very popular product is taken off the market, I think the public wants to know everything it can about how a court arrived at that kind of decision to end up taking a popular consumer product off the market. So where do we draw the line, then? We've got the case law in the Ninth Circuit, which you try to argue, I guess, doesn't necessarily apply to what this court is doing, but if we accept the Ninth Circuit for the purposes of argument, there's a line drawn between the dispositive issues and the non-dispositive issues. Those are the labels they use, but I don't think that gets to the test because when you're talking about the dispositive cases, the courts have said, and particularly the Kamehameha Court, has said that the dispositive cases are at the heart of the public interest, but they never say that defines the entire class of public interest. Well, they kind of say that you apply a different test. No, I mean, they don't exclude one blanket exclusion. They just say, well, because they're different, we're going to apply a good cause test in one area and a compelling reason in the other. Well, but my point is that when they say a dispositive motion is at the heart of the interest, there's still a larger class of documents that are subject to that interest in public access, and it becomes clear when you look at how the Ninth Circuit courts have handled the non-dispositive issue, and it's because they've said, and the Kamehameha Court said this, that usually documents attached to non-dispositive motions are unrelated or tangentially related to the merits of the case. Now, they get this language from Phillips and from Seattle Times versus Reinhart, and it's important to realize that in Phillips, another Ninth Circuit case, they're specifically talking about non-dispositive sanctions motions, and in Seattle Times versus Reinhart, that was a question of access to unfiled discovery. It was not attached to any motion. That was a newspaper defendant sued for libel that was getting discovery as a litigant and wanting to use it as a publisher. So do you want us to rewrite Ninth Circuit law? No, I'm saying that those labels define the extremes. If you take the dispositive motions, those are the ones that dispose of a claim. If you take the non-dispositive ones, they're the ones that are irrelevant. So the Ninth Circuit hasn't given us a good test for what to do with meaningful motions. Well, how do you respond to the point that Judge Bryson was making earlier, which is you often have a dispositive motion that doesn't dispose of a claim. I mean, there are many dispositive motions that we've seen where judges just summarily reject them and say if there are issues of fact, you're going to try. Now, would we then have to say that if anything was attached to that motion, which effectively didn't have anything to do with the ultimate resolution of the case, that somehow that has a heightened public interest? Well, I don't think you have to look solely at what has an effect on the ultimate resolution of the case. It's about access all along to a case. And I think when the Ninth Circuit has had to address this, it looks to other circuits. There isn't a really discrete body of law in each circuit on access. They all look at what the other circuits are doing, and I think some useful information can come from the Second Circuit, where their standard is that there's a continuum of access depending on how useful the information was to a judicial function. And if it was not useful, if it was information considered simply to determine that it was irrelevant, then it gets a lesser standard of access. But if it was used by the judge to make a determination of the rights of the party, not dispose of the case, but a determination, a fundamental determination in the case, then a higher level of access attaches. If it was used by the judge, you think that's the standard we ought to be looking to? If it was considered by the court in determining the rights of the party. Considered versus used are really two very different notions. I mean, the judge is presumed to have considered every piece of paper that comes across her desk, but using in the sense of making that piece of paper an important part of her ultimate disposition in the cases seems to me applies to a very much smaller category of cases. Is it the latter or the former? Well, I'd say it has to be the first. It has to be considered. Anything that could have informed the judges could have. Not even considered, but might have been, was available for consideration by the judge. Filed with the court as attached to a motion. What is the public interest in that? I mean, isn't there a lesser public interest at least, a lesser public interest in those disclosures as opposed to the ones that are relevant to the disposition? Well, in each case, I think it's a factual determination that has to be made by the judge. You know, going back to the Nixon versus Warner communications, they stressed that the common law standard really only works when the judge makes a very close determination of what should and shouldn't be public, and, you know, it should be left to the discretion of the judge. So the public interest considerations may be different, but any time, say, you know, if it's a motion to exclude an expert, that can be very relevant to the public in understanding how this whole court process works. Why did that guy not get to give his opinion in court, and then how did that affect the resolution of the case? What about the policy concern? I mean, is it your view that the minute someone either invokes the processes of the court or is dragged into the processes of the court, that they've essentially laid themselves bare for the public to examine everything about their business? Not laid themselves bare, but when they then, you know, again, as Seattle Times has made clear, unfiled discovery is not subject to any kind of access. So once it's filed, attached to a meaningful motion that the court has to decide, that information becomes subject to the presumption of openness. But what if that party didn't submit it? It was submitted by the other party, and therefore outside the control, the party who was, let's say, let's assume it's the defendant, was brought into the court against its will and had material extracted from it, from discovery against its will, and then had that material submitted to the court against its will. Is that party then, as just O'Malley's question suggests, is that party simply, that's just the cost of doing business? Well, again, the specific information, if there's a compelling reason in keeping it closed, they can make that argument. But, yes, it should be subject to the standard, the presumption of access. But, again, that can be overcome. And, you know, I guess what I would say in the discussion of the trade secrets issue is that there traditionally was something that was a trade secret, that was a method of production that nobody else knew. And that's what the court was talking about in Nixon when they talked about the common law exception for trade secrets. When you talk about protective orders, the language is trade secrets and confidential business information, so it's a much broader class of information. But traditionally, trade secrets have been something much more specific than just confidential business information. And, you know, the court should take that into consideration. If it's a true trade secret that describes your unique process of production, and by disclosing that publicly, you will lose that forever. Your competitors will know your secrets. That's the kind of thing that should be... Do you accept the restatement first definition of trade secrets as the one that we should look to? It depends on how you read it. When they end it with a compilation of information, if you take that in its broadest terms, that can almost mean any information, marketing information, any kind of information can be a trade secret. But if you read it in series with the other descriptions, it really means a compilation of information describing a unique process. I wonder if it really is just narrow to process. I mean, you really seem to be saying a trade secret is the formula for Coke and not much else. But if you have information, confidential information, which in the hands of competitors or, for that matter, suppliers and so forth, would be extremely useful to them and extremely damaging to you, why isn't that a trade secret? Well, it's along a continuum, I would say. I mean, in Nixon, the court looked at trade secrets and it looked at a case from the 1940s out of New Jersey where the issue was a company had a unique way of forming plastic into products and stamping metals into products. What they said in Nixon was even broader. I'm not sure they used the term trade secret even in Nixon, but what they said was business information might harm a litigant's competitive standing. And the only case, right, they cited two cases for that. One was a true trade secret. The other was from the 1890s about any civil complaint being filed against the business should be confidential until judgment, which is the law of nowhere anymore. Okay. I think we have your argument here from your colleague. Thank you. Thank you. Thank you, Your Honor. Mr. Parnas. Mr. Parnas. That's right. Thank you, Your Honor. Good morning. May I please report? I'm Eric Parnas, representing the First Amendment Coalition, and thank you very much for allowing us to participate in this argument. I'd like to begin with an issue that Judge Bryson has touched on and also the issue that Mr. Lee began with. And there was indeed a stipulation filed, and it restricted, the parties agreed that they would restrict the types of information that was actually used at court that was actually going to be admitted. But if you look at the order at A5, the judge goes order, after saying that that fact, that stipulation, might obviate the need for her to consider certain of the motions to seal, so she went on to say that the sealing motions for documents which relate to previously filed motions are not covered by the parties' stipulations and therefore must be ruled on separately. So the stipulation about what would be admitted at trial didn't affect what had already been submitted to the court for its consideration in connection with those motions. And now the fact that some of those motions were denied, and I believe all of the motions to strike or exclude expert testimony were denied in large part, the fact that a motion has been denied, and this is true for motions for summary judgment too, is irrelevant to the analysis. If you look at the key Ninth Circuit cases, Kamikana, Midland, Fultz, none of those cases involved documents that have actually been admitted at trial. And in all of those cases, the court held that the presumption of public access applied and that the compelling reasons standard had to be met. So in Kamikana, these were documents that were attached to summary judgment motions that were denied. And after the summary judgment motions were denied, the case settled. So nothing was ever submitted to a jury. So it is not necessary for the documents to have actually been submitted with a motion that disposed of the case. But you seem to want to argue, your brief sort of says if it's a dispositive motion, then by definition the compelling interest applies regardless of what happens to that dispositive motion. But if it's a non-dispositive motion, you still could have the compelling interest and you've got to look beyond the label of the motion. So the label of the motion is important only when it creates the compelling interest standard, but the label of the motion is not important when it doesn't? The label is not dispositive. I would say that, although it usually will be when you're dealing with a dispositive motion. Because really the question is, is it only tangentially related to the merits of the case? Is it something that actually relates to the merits of the case and that will be relevant to the public's understanding of the judicial proceedings? You have the... I'm actually going to take the example of the case that settled after denial of summary judgment motions. Suppose that the case settled after the filing but before the ruling on the summary judgment motion. Same rule? Yes, it would be there. That is subject to disclosure and subject to the compelling showing requirement? Before... The court hasn't ruled at all? Well, certainly those documents would have been submitted into the public record and would have been submitted to persuade the court to do something. Which the court never had to do. That's correct. And this, I think, comes back to your question on whether the court actually had to have considered, actually had to use it. I don't think that in reviewing a district court's exercise of its discretion, this court has to make those fine distinctions. If it's submitted to the court and asking the court to do something that relates in any way to the merits of the case, that's part of the public's understanding of the judicial process, whether or not the district court actually relies on those particular documents or that particular information. Well, I have a hard time understanding... You know, I can see in a criminal context something about whether somebody gets a bond or something doesn't relate to the merits of the case. But so what is it that a trial court does that doesn't ultimately relate to the merits? Well, the extreme on that side is the motion for discovery sanctions. So there you have a filing with the court that attaches a document that was produced in discovery and that doesn't relate to the ultimate disposition of the case. What if the sanction that's entered is that you're not entitled to make a particular merits argument? Wouldn't that then... So, in other words, you'd pull that in, right? If a request for sanctions sought dismissal of the case, then I'd say that would become a dispositive motion. What if it only sought, let's go down this road, what if it only sought a preclusion of a particular argument or preclusion of use of a particular piece of evidence that is relevant to the ultimate question? Well, I think it would be a call that the district court, based on its knowledge of the case, would have to make. And there are some tough calls that are possible. There are two extremes and then there's a lot in the middle. Here, I don't think it's difficult to conclude that we're closer to one extreme. We're closer to the extreme where the documents are submitted in connection with motions that will significantly affect the resolution of the case. It's not necessary for the presumption of public access to attach that the documents are submitted with a motion that will resolve the entire case. If Apple and Samsung hadn't been permitted to seek the damages that they had sought, that would significantly affect how the case could... How do you define the public interest that we are talking about? There's a public interest in understanding the judicial process and there's a public interest in the particular facts of this case. And both are implicated. But is the second, and this goes back to the question that was asked from Mr. Lester, I think, is the second a freestanding interest or is it tied in to the interest in the public's understanding of the operation of the judicial system? Which is to say, if there are investors out there who would be very interested in knowing something about the internal financial situation of Apple and Samsung, are they part of the public interest, quite independent of their curiosity or anybody's curiosity about the judicial system? There may be an argument for an independent interest, but under the cases articulating the common law right, the common law presumption, it's generally articulated as a presumption that in favor of the public's access and understanding of the judicial process. If something would not materially advance the understanding of the judicial process, even though it might materially advance one's knowledge of how Apple and Samsung operate their businesses, it doesn't get disclosed. It's not an understanding of the judicial process in the abstract. It's the administration of the judicial process in the particular case. But it's easy to see that there could be things that are details that are of no real consequence to understanding how the judicial process works in this particular case, but would be immensely interesting to leaders, let's say the Wall Street Journal, who would be very interested in knowing some of the numbers. And in this case, many of the items we're dealing with are numbers that just wouldn't affect one's perception of the fairness of the proceeding or whether the judge did something that was beyond the scope of legitimate judicial conduct. Given that the Wall Street Journal readers are members of the public... They are, but they have a very different interest. If I understand your answer to me earlier, they have an interest which is not protected by the kind of access concern that you're now articulating. I'm sorry if I misspoke. I would not say that their interest is not protected. It shouldn't be called for discounting their general interest as members of the public in the judicial process as it relates... Ah, judicial process. But that is the touchstone, right? It is not simply an interest in the companies, an interest in knowing more about the way our financial sector operates, correct? Not in the abstract. That's irrelevant. Well, no, I don't think we can say that because we are talking about the judicial process as it applies in this particular case. So it's not... The resolution of this case and how this case proceeds is something of great interest to them because they're interested in how the judicial process affects their rights, affects the rights of litigants. So I don't think you can draw that line. But... Go ahead. Oh, thanks. I just want to say that all of the questions about what exactly is the public interest, though, really is putting the cart before the horse here. The initial question... And I don't think either of the parties mentioned the phrase abusive discretion, which is the standard here. The real question is, have they shown compelling reasons for sealing these documents? And the court did look at it and weigh their submissions, their declarations, attempting to establish compelling reasons. The court... Let me ask you about that. We've asked all your friends here this morning about the whole trade secret question. With regard to other documents, Apple's production and supply, for example, the district court kind of summarily just said these are trade secrets under Ninth Circuit law and therefore properly sealed. Now, with respect to the documents that are in dispute this morning, I don't think there was any reference to trade secrets. Now, she did an analysis that dealt with the potential competitive harm to Apple, some sort of analysis. What is your view on that? Is there no... blanket exception for trade secrets? But does that then come into an abusive discretion analysis about how secret is this particular trade secret? Well, these aren't trade secrets at issue here, and I would begin with that. I think that's actually very clear from the electronic arts case that the parties rely on so much. It's a non-precedential decision, so it's not binding. But what that case dealt with... But we don't have a finding that says these are not trade secrets, correct? Not explicitly, no. She did consider certain documents, the license agreements, which contained the types of terms that the parties are willing to agree to, and those, she found, were trade secrets under electronic arts. Then when she considered the cost, profits, and margins, historical financial data, she found that the parties hadn't made a showing of compelling reasons, and I think implicitly that these are not trade secrets, and they're not. And if you look at the restatement definition, a trade secret is a process or device for continuous use in the operation of the business. And, in fact, if you look at the Bean Declaration, which Apple filed in support of its motion to seal... Well, what did they do? This is not the first part that the parties sent aside. This is further down in Section 757. And, again, it's a process or device for continuous use in the operation of the business. But our compilation of information... Yes. ...which gives him an opportunity to obtain advantage over competitors who do not know him. That's the broad clause. If you go on, it explains that, yes, that's not absolute. So a trade secret differs from other secret information in a business in that it is not simply information. It's just single or ephemeral events in the conduct of the business. And when we're talking about past profit, cost, and margin information, those are single events, ephemeral events, that happened in the past. They don't fit the classic definition of trade secrets. In fact, when we're talking about something that is a device or process for continuous use, Mr. Bean, in his declaration, said, Apple does not follow any formula for setting its margins. This is in paragraph 8, 3630 of the appendix. In other words, Apple doesn't have a process for arriving at these numbers. This isn't proprietary information that Apple uses regularly. It's past profit information, past cost information, past margin information. And the district court found not only... found that there hadn't been compelling reasons to steal, that the arguments that there would be competitive harm from disclosure of this information were conclusory, that they weren't credible. Well, let me make sure I understand what you're saying about trade secrets here. You say, well, this is past information. You can't say trade secret. And then you say, well, trade secret is really about process, which is the same argument Mr. Leslie made. Are you saying that if this is present information that could be very damaging if disclosed, that it is not a trade secret because it is not a process? It's present information about margin, let's say. Is that not a trade secret in your view? I'm not... The idea of present information about margin, I'm struggling to get my head to understand. Well, it's margin as of this week. And so the last time we ran the numbers. Right, right. It's not a trade secret. No, no, it wouldn't be. Could there be competitive harm from the release of that information? Yes. Is that a compilation of information that if known to competitors would be damaging to the person, to the principal? Potentially it could if there was a showing, a specific showing, yes. And that would make it a trade secret, correct? No, I don't think it would. Why not under the definition of the restatement?  I was quoting the restatement. Sure. And, Your Honor, I think the definition of what is a trade secret is not limited to a compilation that could be damaging if known to competitors. It is further qualified in the definition. And I don't think the fact that it is a compilation of information that competitors would find useful or that could damage is sufficient. And under the definition on obsessivism, the fact is that the parties do have an outlet. They can show that they would suffer competitive harm if the information was released. And that would be a compelling reason to seal. The district court, in its exercise of discretion, found that they hadn't made that showing. And the conclusory statements that they would suffer grave competitive harm, those aren't sufficient to do that. In the Doe v. Kamehameha case, the court dismissed the city's claim that disclosure of information would endanger people's lives. Simply because a party says so doesn't mean that the district court has to accept it. And that's what we're talking about here. Thank you very much, Mr. Lee. And you also reserved some rebuttal time, so we'll give you each three minutes for rebuttal, if you need it. Let me make four points. The first is, Apple does not contend that there's a blanket exception for trade secrets. Once you've demonstrated a trade secret under a common deed of Section 757, the analysis never necessarily stops. What we are saying is, it is a compelling reason that can lead to sealing. But you say it's not a blanket. That means that the district court gets to look at the nature of your arguments, of what the harm is, etc. And that review is subject to an abuse of discretion review by us, right? That's 100% correct, Your Honor. And that's one of the reasons I made the point in my opening argument, that there are a host of decisions the judge may have made that are not before this court and never will be before the court from either of us, because we understand it's an abuse of discretion. It's the reason we brought a very narrow set to you. And I think I can demonstrate, probably most clearly, with the financial information that was submitted with non-dispositive pretrial motions. She never found it wasn't a trade secret. I think most of the world would be shocked to find out that your pricing information, your margins, your profits, your costs, are not considered a trade secret. All of the products, that this information, it's an issue, are still on the market today. But wouldn't the trade secret component assume that there is potential harm if there is relief? And doesn't the fact that she found that you didn't prove the likelihood of harm, while that could be done in the balancing context, it's also a component of your trade secret showing. So shouldn't we just assume that what she meant by that is that there's no trade secret? Your Honor, the candid answer is on an issue as important as this, because my last point will be the effect it would have, the rule that's being proposed here, that anything gets filed as public, the effect it would have on patent litigation in this country is immense. But I think it's important. She never found it was not a trade secret under the restatement definition. She did go to what I would call countervailing considerations. We recognize there's some abusive discretion, but let me give you a good example. She had just three reasons on the financial information. One is that the products need to be perfectly interchangeable for the information to be useful. There's nothing in the record about that. No one made that.